. UNITED STATES v. MURPHY et al.

(Circuit Court, N. D. California. September 25, 1909.)

1. PUBLIC LANDS (§ 120*)—HOMESTEAD ENTRY—RESIDENCE—IMPROVEMENT—
EVIDENCE.
    In a suit by the United States to set aside a patent issued for a homestead entry, evidence *held* to require a finding that there had been no such actual, continuous residence on the land by the homesteader, with . the intention to establish a home there to the exclusion of one elsewhere, as the law required, or that the required improvements had been made.
    [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

2. PUBLIC LANDS (§ 138*)—HOMESTEAD—CONVEYANCE—NOTICE TO PURCHASER.
    A purchaser of a homestead entry from the entryman on the day he proved up, before a final certificate had been issued, was not for that reason charged with notice of the entryman's failure to comply with the homestead law, where the final certificate and the patent were thereafter issued before suit was brought to set aside the patent and cancel the entry; but, the patent having issued before suit, the purchasers were entitled to the rights of bona fide purchasers, if they purchased for value and without notice.
    [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 138.*
    Bona fide purchasers of public lands, see note to United States v. Detroit Timber & Lumber Co., 67 C. C. A. 13.]

3. PUBLIC LANDS (§ 120*)—DEFECTS IN TITLE—NOTICE—EVIDENCE.
    In a suit by the United States to set aside a homestead patent on an entry, evidence *held* to ·charge a purchaser of the land from the entryman with notice· of the latter's failure to comply with the homestead law.
    [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

In Equity. Suit by the United States of America against Albert M. Murphy and others. Judgment for complainant.

---

George Clark, Asst. U. S. Atty.

Frank Freeman, for defendants.

FARRINGTON, District Judge. This is a suit brought to cancel a patent issued to the defendant Albert M. Murphy under the provisions of the homestead law. The patent purports to convey certain lands in Glenn county, in the Northern district of California, situated about midway between and to the west of the towns of Millsap and Elk Creek. Homestead application was entered March 26, 1900. Final proof was made May 13, 1905. Four days later a final certificate was delivered to Murphy, and on the 5th day of the following November patent issued. On the very day, and immediately after final proof was put in, Murphy deeded the land to the defendants H. D. Knight and John D. Knight. The deed was thus executed prior to the issuance of either final certificate or patent. The patent antedated the commencement of this suit more than two years. It is urged that the defendant Murphy failed to cultivate the land so entered, or to reside continuously thereon as required by law, and that the defendants H. D. Knight and John D. Knight had ample notice of these facts prior to the execution of the deed to them.

[1] Upon final proof Murphy and his witnesses testified that he had resided on the homestead continuously for five years, had cultivated about half an acre thereof for garden purposes for five seasons, that he had used the land continuously since settlement for pasturing his own stock, and that the improvements thereon consisted of a dwelling house, barn, and three-quarters of a mile of board, barbed-wire, and post fencing.

The evidence now before the court, however, shows very conclusively that these statements were far from true. The entryman never plowed or cultivated any portion of the homestead. His improvements consisted of a fence three-quarters of a mile long, and a house 12x14, built of rough lumber, containing but one room. It also appears that he grubbed out a little brush. At the time he filed on the land Murphy had a wife and four children. Almost immediately after entry he went on the land with his family. About the middle of June, 1900, they went away. The family lived from the fall of 1900 until the spring of 1902 at or in the vicinity of Millsap. From the spring of 1902 until June, 1904, they lived in a house on Mr. Gillespy's ranch about one mile from the homestead. In August, 1904, Murphy separated from his wife, and from this time until after final proof he appears to have made his headquarters at Elk Creek. It is not shown that the family ever returned to the entry after June, 1900.

During the first two winters after his entry Murphy herded goats on the homestead and adjoining government land. During this time he seems to have occupied his cabin. During the remainder of the five years he visited the land at intervals of from one to two or three months, staying for a night or two on each occasion. Until June, 1904, his actual residence appears to have been with his family. An attempt is made to excuse the failure of the family to reside on the place by showing that the wife insisted on living where the children

could go to school. But it is not shown that the family resided on the entry when there was no school, nor that Murphy made any attempt to render his one-room cabin habitable for such a family.

After leaving the Gillespy place in June, 1904, Murphy worked three months for a man named Garnett, 12 or 15 miles distant from his entry. During this time Murphy made no visits to the homestead. For the following six months or more, Murphy was at or near Elk Creek. This he says was his post office and where he had his home.

The proof clearly shows that there was no such actual continuous residence on the land in question as the homestead act contemplates. There is nothing in the evidence to show a bona fide intention to establish a home and a residence on the homestead entry to the exclusion of one elsewhere. Morrison v. Davidson, 16 Land Dec. Dept. Int. 378; Puette v. Greer, 33 Land Dec. Dept. Int. 417, 419; Small v. Rakestraw, 196 U. S. 403, 25 Sup. Ct. 285, 49 L. Ed. 527.

[2] The only question remaining is as to whether the Knights had notice of Murphy's failure to comply with the homestead law. I cannot agree with counsel that the Knights should be charged with such notice simply because they bought the land before final certificate issued. Such might be the rule if the government had brought suit before patent to cancel the entry. Travelers' Ins. Co., 9 Land Dec. Dept. Int. 316, 321.

But, patent having issued before suit, the Knights are now entitled to enjoy the rights of a bona fide purchaser, provided they purchase for value, and without notice of Murphy's failure to comply with the homestead act. United States v. Clark, 138 Fed. 294, 70 C. C. A. 584.

[3] The evidence convinces me that the Knights, before Murphy put in his final proof, had notice sufficient at least to put them upon inquiry. The Knights kept a store, and J. E. Knight was postmaster at Elk Creek during this time. Elk Creek was then a little place of about one hundred people. Here or in this immediate vicinity Murphy made his home. This was his postoffice. Murphy saw Knight nearly every day. At the time of final proof Murphy owed the Knights a bill of $278, which had been standing for a year and a half or two years. A few days before final proof was made Mr. H. D. Knight asked Mr. Murphy about proving up, and agreed to let him have, and did let him have, $20 to prove up with. He accompanied Murphy to Willows from Elk Creek when the latter went to prove up, and immediately after the proof was put in he went down to the courthouse and "asked the county clerk what kind of proof Albert Murphy had put in," and on the same day, before they returned to Elk Creek, the land was deeded to the Knights for $300. Of this sum Murphy received but $20 in cash; the balance was applied in settlement of his bill.

T. J. Gillespy, who occupied a place adjoining the homestead, testifies that he had an interview with Mr. H. D. Knight before the final proof was made. During the course of this interview Mr. Knight proposed to sell the Murphy homestead to Gillespy. Gillespy said to him:

"I told him I didn't think he could get a patent on the claims. I didn't think he had sufficient proof. * * * I told him before that I wouldn't take the property unless he would give me a good title."

The following testimony was given by Mr. Gillespy:

"XQ. 98. Two or three days before the final proof was made you were going to contest it, and why didn't you do it? A. Mr. Knight came to me, and he says to me, he says: 'Are you going to contest those applications?' I says: 'Yes, sir.' He said: 'What are you going to do it for?' I said: 'Because I don't want any one to get it without they have a good title. They interfere with my ranch considerably. If any one gets it, I will take my chances on getting the land afterwards; but I want a good title.'

"XQ. 99. You said you wanted a good title? A. Well, then Mr. Knight says: 'Well, now, what is those patents worth to you? You just state to me what they are worth to you with a good title.' I says: 'I don't think you can get a good title with that proof.' He says: 'I will guarantee the title.' I says: 'If you guarantee the title, I will give you $600 for the two places.' Well, Mr. Knight says: 'That is enough. Don't say any more.' He says: 'You won't appear against us, will you?' I says: 'No, sir.'"

Mr. Knight denies that he ever had any conversation with Mr. Gillespy about buying the place until after final proof. However this may be, it is unreasonable to suppose that Mr. Knight was ignorant of the fact that neither Murphy nor his family resided continuously on the homestead. Knowledge of this fact was sufficient to put him upon inquiry. Wafer v. Harvey County Bank, 46 Kan. 597, 26 Pac. 1032, 1036.

Let a decree be entered in accordance with the prayer of complainant's bill.